UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

IDOLTHUS HUBBARD,

        Plaintiff,                      Case No. 2:24-cv-186

v.                                          Hon. Hala Y. Jarbou

UNKNOWN PLONT et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim on which relief may be granted.

**Discussion**

**I.**        **Preliminary Review Under the PLRA**

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

When conducting the initial PLRA review, the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and view facts in the light most favorable to the plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true,"

but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Plaintiff's "complaint" reads more like a brief than a "short and plain statement of the claim," as required by the federal rules. Fed. R. Civ. P. 8(a)(2). It is filled with legal citations, arguments and conclusions, despite the Court's instruction: "State here the facts of your case. Describe how each defendant is personally involved. Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statutes." (Compl., ECF No. 1, PageID.3.) Eleven pages into Plaintiff's twenty-two-page complaint, Plaintiff steps back from his arguments and legal conclusions to state the facts. (*Id.*, PageID.11–16, ¶¶ 8–27.)[1]

Although the Court's preliminary review is focused on the allegations in the complaint, the Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to the plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16–1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20–4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)).

---

[1] Plaintiff supports all of his factual averments in the complaint with an affidavit that presents the same factual statements. (ECF No. 2.)

"When a document attached to the complaint contradicts the allegations, the document trumps the allegations . . . [if the] document . . . 'utterly discredit[s]' the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020).

Plaintiff attaches the following documents to his complaint: kites from Plaintiff dated July 29, 2022, September 14, 2022, and October 5, 2022 (ECF Nos. 1-1, 1-2, 1-3); Plaintiff's June 8, 2023, grievance (ECF No. 1-4), the MDOC receipt for the grievance (ECF No. 1-5), the MDOC grievance rejection (ECF No. 1-6), Plaintiff's written requests for the second-step appeal form (ECF Nos. 1-7, 1-8), Plaintiff's second-step appeal (ECF No. 1-9), the MDOC second-step grievance rejection (ECF No. 1-10), and Plaintiff's third-step appeal, postage disbursement authorization, and the MDOC third-step grievance response (ECF No. 1-11); and Plaintiff's affidavit (ECF No. 2).

## II.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues KCF Food Service Steward/Supervisor Unknown Plont and KCF Classification Director Unknown Church.

On July 28, 2022, at about 1:30 p.m., after lunch-lines were finished, Plaintiff cleaned up his work area in the chow hall. (*Id.*, PageID.11.) Then he approached the chow hall officer's desk and asked the officer, Corrections Officer Barthal (not a defendant), to sign Plaintiff out. (*Id.*) Officer Barthal signed Plaintiff's time-card, patted Plaintiff down, and reminded Plaintiff to return at 3:30 for the next meal shift. (*Id.*)

As Plaintiff was leaving the chow hall, "Defendant Plont approached the officer's desk, sat down[,] and asked Plaintiff, 'Where the F*** do you think you're going?'" (*Id.* (asterisks added).)

4

Plaintiff asked Defendant Plont to not "cuss at" Plaintiff. (*Id.*) Defendant Plont replied, "Don't be so F******* sensitive, I'm just pulling your leg." (*Id.* PageID.12 (asterisks added).) Plaintiff noted that he had just asked Defendant Plont to stop cussing at Plaintiff. (*Id.*) Plont replied, "I don't care what the F*** you said. Now you're not going anywhere, get over there and help pan up that bread!" (*Id.* (asterisks added).) Plaintiff responded: "Dude, didn't I just ask you to stop cussing at me, don't cuss at me again. I don't cross that over[-f]amiliarity line playing with correctional officers or food stewards and if I cussed at you, I'm guaranteed a Class One insolence ticket." (*Id.*) Defendant Plont agreed, "You're damn right, cuss at me you're guaranteed to go to the hole." (*Id.*)

Plaintiff asked Officer Barthal, "Ah, Barthal, can I please leave because [that] dude keep[s] cussing at me and I've asked him several times to stop and I'm starting to feel uncomfortable." (*Id.*) Officer Barthal agreed but reminded Plaintiff to be back at work at 3:30 p.m. for the next shift.

As Plaintiff approached the exit, Defendant Plont again challenged Plaintiff, "Where the F*** are you going? I didn't give you permission to leave!" (*Id.* (asterisks added).) Plaintiff answered, "Because you won't stop cussing at me, C/O Barthal gave me permission to go back to the unit." (*Id.*) Plaintiff then asked Officer Barthal to contact a sergeant or captain because Plaintiff wanted to report Defendant Plont's cussing and the impact on Plaintiff: it made him feel unsafe. (*Id.*)

Defendant Plont rose from his chair and said, "I'm tired of this 'fat ass snitch.'" (*Id.*) He walked into the food service director's office. When Defendant Plont returned, he slammed a prisoner's work assignment form on Officer Barthal's desk. Defendant Plont demanded that Plaintiff sign the form and stated, "I don't work with snitches." (*Id.*)

Plaintiff looked over the form. He told Defendant Plont:

> I never said that I quit my job or refuse to work, I'm going back with staff permission to talk to a sergeant and make a verbal complaint because you won[']t stop creating an unsafe environment and you keep cussing at me, I never said anything about quitting my job, so I'm definitely not signing that.

(*Id*. PageID.12–13.) Defendant Plont replied, "I don't care, you're going back to w[h]ine like the snitch you are, if [your] fat ass walk[s] out that door, I'm gonna report it as you quit!" (*Id*. PageID.13.)

Plaintiff did not concur, stating:

> Aye, I never once said that I was quitting my job, I'm not signing a work waiver form. Matter of fact, C/O Barthal, please take notice that I have constantly ask[ed] "Plont" to stop cussing at me and he has yet to stop. I am reporting this verbal abuse to you and now I want to talk with a sergeant.

(*Id*.) As Plaintiff exited the chow hall, Defendant Plont ended the exchange by stating, "Alright snitch, I hope you know that you're out of a job." (*Id*.)

When Plaintiff returned to his unit, he spoke with Corrections Officer Neumann concerning the incident with Defendant Plont. (*Id*.) She advised Plaintiff that she would call a sergeant or lieutenant regarding the matter. (*Id*.) She communicated with Captain Romeri. She advised Plaintiff that Captain Romeri was available to discuss the matter on the "big yard." (*Id*.)

Captain Romeri told Plaintiff that Officer Barthal had already called Romeri regarding the matter. (*Id*.) Captain Romeri advised Plaintiff that Romeri would address the matter with Defendant Plont. (*Id*.) Captain Romeri informed Plaintiff that he should return to work, but avoid any further conflict with Defendant Plont. (*Id*.)

Despite Captain Romeri's instruction to return to work that afternoon, Officer Neumann informed Plaintiff that Defendant Plont had informed her that Plaintiff was "laid in" from his assignment pending investigation. Accordingly, Plaintiff did not return to work that afternoon.

When Plaintiff sought counsel regarding the matter, he was advised to report the incident to a "higher authority." (*Id*. PageID.14.) Plaintiff discussed the matter with Defendant Plont when

6

Plaintiff went to the chow hall for dinner. (*Id.*) Defendant Plont advised Plaintiff that "since you want to run and be a snitch, you're fired because I don't work with snitch[e]s." (*Id.*)

The next day, Plaintiff wrote his first communication to Defendant Church. (Id.) He informed Defendant Church about the incident with Defendant Plont and asked for a copy of the waiver form that Plaintiff had, according to Defendant Plont, signed. (*Id.*, *see also* ECF No. 1-1, PageID.25.) Plaintiff did not hear any response from Defendant Church, so on September 14, 2022, he sent another kite to Defendant Church regarding the matter. (Compl., ECF No. 1, PageID.14, Sept. 14, 2022, kite; *see also* ECF No. 1-2, PageID.27.) Again, Defendant Church did not respond. Plaintiff sent a third request on October 5, 2022. (*Id.*; *see also* Oct. 5, 2022, kite, ECF No. 1-3, PageID.30–31.)

On October 14, 2022, Plaintiff ran into Defendant Church in the educational building hallway. (*Id.*) Plaintiff pointed out that he had never received a reply to his kites. (*Id.*) Defendant Church indicated that Plaintiff should be happy that he did not receive a double "O."[2] (*Id.*) Plaintiff replied that he intended to file a grievance against Defendant Church because, according to Plaintiff, he was entitled to return to his "job as a kitchen worker."[3] (*Id.* PageID.15.) Defendant Church told Plaintiff that Church did not care about the threatened grievance and advised Plaintiff that he should "get out of [Church's] face before [Church] placed [Plaintiff] on Double OO status." (*Id.*)

---

[2] In the present version of MDOC Policy Directive 05.01.100, Prisoner Program Classification (eff. Dec. 2, 2024), the consequences of being classified to unemployable status are set forth in paragraph CC. In a prior version of the policy, however, those consequences were spelled out in paragraph OO. *See, e.g., Ali v. Knight*, No. 1:22-cv-287, 2024 WL 5497922, at *2 (W.D. Mich. Dec. 9, 2024). Although the paragraph containing the list of consequences has moved several times, the "double O" appellation remains.

[3] Defendant Plont removed Plaintiff from his kitchen job, but Plaintiff continued to work in the facility as a unit porter. (ECF No. 1-4, PageID.35.)

7

Almost eight months later, on June 8, 2023, Plaintiff filed a grievance against Defendants Plont and Church; the grievance described the events just as Plaintiff has set them out in his complaint and affidavit. (*Id*.; *see also* ECF No. 1-4.) The grievance was rejected as untimely on June 9, 2023. (*Id*.; see also ECF No. 1-6.) Plaintiff appealed the rejection, but he did not specifically challenge the determination that the initial grievance was untimely. (*Id*. PageID.16; *see also* ECF No. 1-9.) The Step II appeal was also rejected as untimely. (*Id*.; *see also* ECF No. 1-10.) Plaintiff filed his Step III appeal; he did not challenge either determination of untimeliness. (*Id*.; *see also* ECF No. 1-11, PageID.50.) At the third step, the MDOC rejected Plaintiff's submission because it did not include the Step I grievance or response. (*Id*.; *see also* ECF No. 1-11, PageID.53.)

Plaintiff contends that Defendant Plont violated Plaintiff's First Amendment rights by retaliating against Plaintiff for threatening to file a grievance or otherwise complaining about the way Plont had treated Plaintiff. Similarly, Plaintiff contends that Defendant Church violated Plaintiff's First Amendment rights by threatening to place Plaintiff on double "O" status after Plaintiff had threatened to file a grievance. Plaintiff also claims that Defendants violated his Fourteenth Amendment substantive due process rights because their behavior "shocks the conscience." (*Id*. PageID.18.) Finally, Plaintiff claims that Defendants violated Plaintiff's Fourteenth Amendment procedural due process rights by taking away his employment in the kitchen without any process.[4]

---

[4] Plaintiff also includes the Fifth and Eighth Amendment in conclusory lists of constitutional rights that Defendants have purportedly violated. (Compl., ECF No. 1, PageID.6–9.) Plaintiff does not specifically identify which conduct he believes violated those amendments.

Plaintiff asks the Court to "issue declaratory and injunctive relief declaring that the arbitrary acts and malfeasance omissions of the defendants have indubitably violated Plaintiff's rights." (*Id*. PageID.20.) Plaintiff also seeks compensatory and punitive damages. (*Id*.)

### III. Analysis of Plaintiff's Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff claims Defendants have violated the First, Fifth, Eighth, and Fourteenth Amendments.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of the PLRA is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This means the prisoner plaintiff must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id*. at 88. To properly exhaust his claims, a prisoner must utilize every step of the prison's procedure for resolving his grievance and follow the "critical procedural rules" in a manner that allows prisoner officials to review and, where necessary, correct the issues set forth in the grievance "on the merits." *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016) (quoting *Woodford*, 548 U.S. at 81, 95).

While failure to exhaust administrative remedies is an affirmative defense that "inmates are not required to specially plead or demonstrate . . . in their complaints," a complaint that sets forth allegations which, taken as true, establish that the plaintiff has failed to exhaust his available administrative remedies is subject to dismissal for failure to state a claim upon which relief may be granted. *Jones v. Bock*, 549 U.S. 199, 214–16 (2007); *Barnett v. Laurel Cnty.*, No. 16-5658, 2017 WL 3402075, at *1–2 (6th Cir. Jan. 30, 2017) (affirming district court's dismissal of the complaint at screening for failure to exhaust where the complaint demonstrated on its face that the plaintiff had failed to pursue available administrative remedies) (citing *Bock*, 549 U.S. at 215 and *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (providing that "a court can dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust")); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citation omitted) (noting that "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by [an affirmative defense], the complaint is subject to dismissal for failure to state a claim" (modification in original)).

In *Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011), the Sixth Circuit Court of Appeals identified certain critical procedural rules regarding the timing of administrative grievances filed by prisoners incarcerated with the MDOC:

> The PLRA's exhaustion requirement, contained in 42 U.S.C. § 1997e(a), requires "proper" exhaustion, which includes compliance with a state agency's timeliness deadlines. *See Woodford v. Ngo*, 548 U.S. 81, 90–918 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); *see also id.* at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). P.D. 03.02.130 requires an individual to attempt to resolve a potentially grievable issue with staff within two business days after becoming aware of the issue, "unless prevented by circumstances beyond his/her control," P.D. 03.02.130, ¶ R, and if

> that doesn't work, to file a grievance within five business days after attempting to resolve the issue with the staff member, *id.* at ¶ X. It is undisputed that Siggers did not file a grievance for any of these Notices within this time frame.

*Id.* at 692 (parallel citations and footnote omitted). "A Michigan prisoner exhausts his administrative remedies by timely proceeding through a three-step process." *Doss v. Corizon Medical Corp.*, No.21-1423, 2022 WL 1422805, at *1 (6th Cir. Mar. 15, 2022).

Plaintiff, like prisoner Siggers, failed to comply with the "five business day" deadline. Indeed, he missed it by almost a year with regard to his claims against Defendant Plont and about eight months with regard to his claim against Defendant Church. The MDOC relied on the tardiness of Plaintiff's grievance when rejecting it. Although Plaintiff proceeded through all three steps of the MDOC grievance remedy, the MDOC never addressed the merits, acting instead on Plaintiff's procedural failures. Plaintiff has failed to allege any facts to explain his delay nor has he alleged facts that would support an inference that the grievance remedy was unavailable to him.

Because Plaintiff failed to properly exhaust his administrative remedies before filing suit—and that failure is apparent on the face of Plaintiff's complaint and exhibits—Plaintiff has failed to state a § 1983 claim on which relief may be granted. Accordingly, the Court will dismiss Plaintiff's complaint without prejudice.

## <u>Conclusion</u>

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reason the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might

raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

    A judgment consistent with this opinion will be entered.

Dated: September 24, 2025　　　　　　　　　　/s/ Hala Y. Jarbou
　　　　　　　　　　　　　　　　　　　　　　　HALA Y. JARBOU
　　　　　　　　　　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE